Rexnord Industries v. Habasit Belting Incorporated Industries v. Habasit Belting Rexnord Industries v. Habasit broadest reasonable interpretation approach used in a variety of PTO proceedings is that the patentee has the opportunity to amend. Why is that policy not rendered inapplicable when the board establishing as part of this this is an inter-parties re-exam, so this is inter-parties re-exam says the broadest reasonable interpretation is X. Whether it's right or wrong about that that becomes something that the world can rely on and therefore you don't have to worry about amendments to narrow it because it's in fact already been circumscribed as no broader than this. So what would be the point of saying oh no, no, it's actually even broader than that because the world can rely on this being the outer limit. Because when it comes to the board there's no opportunity to amend at the board level and that's the board reversed the examiner's broadest reasonable construction and that is when they should have been doing their amending. So there's a final decision of the board that says we are upholding, rejecting, making a variety of decisions about various claims and various grounds for rejection and doing so in reliance on the patent reaching no further than this. After that has happened the world can rely on the patent not being and there's no need to amend to bring it down to that. It's down to that. I'm afraid I may not be understanding your question. I can tell you certainly that because of the importance of de novo review of the board's claim construction it is not final. Whatever the construction is you must and you have said this on various occasions we review claim construction anew and without deference. That's the digital biometrics case. But we don't review it to see what the broadest reasonable construction is. We review anew to determine what the correct construction is. Why wouldn't we do that in this case? That is absolutely incorrect understanding of the law, Your Honor. I respectfully say that is the case. Have you read the cases following Morris? Yes. They all ignore Morris. Morris upheld the board's standard of review but the cases following Morris flop around. This is an area of some interest to me, counsel which is why I happen to be familiar with it. And they flop around and most of them say we review the claim construction de novo. We never do anything de novo but they say de novo. Meaning without deference. Without deference means we really don't care what the board said. What we care about is what's the right construction. We have never issued a case that I'm aware of that said our review of anything is the broadest reasonable construction. Can you cite a case in which we've said that? In reexamination, that is the test. That is the test. And Mr. Peary may find me a case that says that and we'll be with it if I have any time left to rebut. Okay. You don't have any time left to rebut. I'm going to give you some time. Okay. So maybe you can come up and answer that question. Thank you, Your Honor. Okay. I'm going to restore three minutes of rebuttal time. Thank you very much. Which doesn't necessarily mean we wouldn't agree with you that you're right and they're wrong. The only question is what is the relationship between the broadest You make a big case of the broadest reasonable construction. Yes. I'm not sure your interpretation is any broader, but it could be shorter. It could be broader. And I understand your point is are you, on review, trying to get a Phillips-type true construction as opposed to what is the broadest construction that can be applied within the bounds of reasonableness consistent with the claims? And we'll find a case. Okay. Thank you. Mr. Bailey, you're dividing your time up 13 minutes. And what's it, two minutes for your motion? Two minutes for rebuttal. Yes, Your Honor. Thank you. And may it please the Court, Matthew Bailey here on behalf of Havasut Belting. We are the Appellee Cross Appellant. And I'd like to start with this question that we ended on with Mr. Cross on Phillips construction versus broadest reasonable. And I know this issue was not briefed in this case, but I do have some opinions on that. And I do suggest there are three reasons why this Court is not bound to follow in its de novo review of the claim construction the broadest reasonable construction. And I apologize for not having case sites handy here, but the first is judicial economy. Imagine the scenario where we have a broadest reasonable construction, in effect, established by this Court, and then a district court, which there is a pending district court case, comes up under the Phillips analysis. Wouldn't it make a lot more sense to get the true meaning of these claims resolved right here where we have all the parties here, everything is here. Let's establish that here. That's one reason, judicial economy. Otherwise, we'd be back up here. We now have, and have had for a while, a two-track system with different standards, and there are problems of the sort you just described. That's one reason. The other is, of course, the Federal Circuit has jurisdiction over the district court. And the third important reason is that the amendment time here, for all intents and purposes, is over. Unless there's some unusual procedure here, possibly a remand back. We have had this chance. It got new grounds of rejections, and it made an amendment to several claims. So, really, the concern that validates the broadest reasonable construction is over. We are now here to, in my view, find the true meaning of these claims and to establish their validity. Which could go either way. We could agree with the executor, or we could agree with the Board in whatever way we think is the right way to interpret it. Absolutely, and I have some view on the Board's correct claim construction here. And there are, essentially, to address Mr. Cross's point about the meaning of a cross, there's another important point about the claims themselves that support the Board's construction of a cross, having the corrugated portion go over the entire width. And if you take the claim itself and read it, of course the word cross is present, and that, according to our definition, goes from one side to the other. But turning specifically to the language, take Claim 1, for example. It says, I'm looking in the patent on A72, column 6, line 36. It says, the corrugated portion extending across the intermediate width between the first and second walls to the other of the upper and lower surfaces. And then it says, wherein the corrugated portion has a sinusoidal shape comprising a series of regularly spaced ridges and valleys extending substantially across the lateral width. So the idea that the corrugated portion goes between the first and second walls. Between is another key word. I submit that the language itself supports the entire concept, going across the entire width, because it says across, which means from one side to the other, and between, from one wall to the other. And just to pose a hypothetical, if the Court were to adopt Rexart's construction of having it extend only across a portion, then that begs the question, what would be the width of the intermediate section? Well, I assume the construction they argued for is one, and the reason they call it broader, although physically it's not necessarily broader, is their construction would allow it to extend partially or the entire width. Either. Is that your understanding? That's what I take they mean by a broader... I understand that inference, but I think that would run afoul of the definiteness requirements of claim drafting. So is it partial, or is it all the way across? I think if you look at the claim language, Hefferson did a very disciplined job trying to define the precise meets and bounds of these claims. If you look in the claim, the word define occurs. We're defining one wall, one wall, and then to have a construction in the face of that effort that says, well, it's anything in the middle, just doesn't make sense. It's not supported by the claim language itself. So I can see your point, but I would suggest that the claim language and the preferred embodiments, the figures exactly, do show what the Board has shown. The corrugated portion does go across the entire... When Mr. Cross gets back up, I'll ask him for a clarification of his view on that. Can I ask you something that we didn't really talk about in the opening argument? And it may well be that the other side has, in fact, waived any contention, particularly with respect to obviousness based on Horton and Ench and Irwin with that Rejections 3 Act. It's a little hard for me to keep track of the numbers of the rejections, but the one that covers 1 through 22, obviousness, Horton, Ench and Irwin, it may well be that they've waived any argument for that independent of their broader construction. In fact, their heading says, under the proper construction, blah, blah, blah, and they don't make an argument. Put that aside for a minute, and I want to ask you, under the construction that we have, why was the Board right about not finding obviousness as to 1 through 22 based on those three sources? Exactly. I'm glad you asked that question. First of all, I will disagree with Mr. Cross. There has been no concession that all the elements are met in both Horton and Ench. If you look at the Board decision, you will see that the Board clearly says that it's assumed, almost assumed, that Horton does not disclose a web. It discloses the corrugated portion. Then on the other hand, there has been some loose language in the briefing, frankly, where the support rib 90 of Ench has been called a web. It's not a web, and I'm here to tell you why. The support rib 90, and if you look at column 7 of the Ench reference, is in a bullet shape, and figure 3, I believe, shows this as well. It is not a web. It is a bullet-shaped structure that has three important aspects to it. The first is the bullet shape has a narrower head, and I'm using my hands to gesture here, a wider base and sort of curved edges towards a narrower top. The bullet shape has the idea of minimizing surface contact with the items riding on top of the conveyor belt. I would suggest, common sense suggests, that support rib is small. The second aspect is with regard to reduction of turbulence, and this is all in the Ench patent, as you wash items on there or fluid flows over, the bullet shape allows the turbulence to be reduced, which is an advantage. Again, common sense dictates that means a small support rib 90. And the third point is that, let me check my notes here, it eases cleaning, which I guess is somewhat associated with reduction of turbulence, but as you're wanting to clean either the belt or the items on there, the bullet shape eases cleaning, and I think common sense dictates that means there's extra space around. So what we have here is support rib 90 an inch, and we have a corrugated portion in Horton, and the proposed combination takes the support rib and tries to put the bullet shape on top of the corrugated portion, like this. And the question is, first of all, is it a web? I submit, no, it's not. It's a support rib. Second of all, would one of Ordinary Scale combine these two under the proper KSR analysis? The briefs make much that the board missed KSR. Fundamentally disagree with that. The board got KSR. KSR came out in 2007. It was cited to the board. Of course, the case of the Enterprise Recon started before the exam, and before KSR came out. But 2007, KSR comes out. The board's informed of it. The board writes about KSR in its opinion, cites the right phrase, and I'll just quote from the board's decision. It says, Rejections on obviousness grounds cannot be sustained by mere conclusory statements. Instead, there must be some articulated reasoning with some rational underpinning to support the legal conclusion of obviousness. That's right in the board decision. The board didn't miss KSR. So the question here, when we look at Inch in combination with Horton, or the support rib on top of it, you wonder, why would one of OrdinarySkill do it? And RecStar makes much of it, you need to be stronger. Well, we've just explained that the support rib of Inch is intending to be small. And then there's so many questions about how you would put this together, and there's just been no articulated rationale. There's been no reason put forward, and the board found that. Now, this is in addition to what the board found. The board found that the support rib essentially forms the same function as the corrugated portion, so you wouldn't think to add them together. That is my interpretation of the board's rationale. What I've described about Inch, the three functions, is in support of that theory, but it's also in addition to what the board said. So I submit that is why Horton and Inch together. First of all, they cannot be combined, and they certainly do not disclose the rib function. Now, the last combination here is Erwin. Erwin is a reference that sometimes is argued to be part of the combination, sometimes it's not. Erwin simply teaches the addition of a flat bar on top of a radius belt, and just the whole idea of the claim construction, having a web that forms into, the claim says forms into a corrugated portion, that is clearly not taught by the idea of just putting a support rib on top. And that's arguably what Erwin teaches, a simple support rib for added strength, and putting that on top of the Horton would not meet the claim limitation. Then also, just one last point on the idea of KSR, doesn't require express motivation in the references. So we're allowed to use common sense, we're allowed to speculate a little bit, and use what Werner Berners-Gill would know. And I'll just make the point that this technology is very, very, it's much more detailed than some of the other references, the Dutch manual or the machining manual. These are highly engineered pieces of plastic that are mobile, they move, they have interleaving pieces, and to make the bold assumption that stronger is always better, simply is not true. Sometimes lighter is better, sometimes you need more space. It depends on the application, which is another reason why we submit that these three references aren't combinable on their own. Mr. Phillips, Bailey, I'm sorry, Mr. Bailey. There's a lot going on in this case. Let me be sure I have the big picture. And if I understand it and count correctly, the board's final outcome of the 25 claims was to allow 14 and reject 11. Is that roughly correct? Let me check your count. Andy, can you check that? I think that's right. That's what my notes reflect. They rejected all of the independent claims but allowed you a number of the dependent claims. Yes, that's right. 14 is not rejected, which is independent. Claim 14? Correct. A total of 14 claims. Yeah, a total of 14 claims, yes. 14 is green on my notes. I wanted to be sure I got my count right and I understood which claims were which. Thank you. And I would like to follow up on the dependent claims and particularly to emphasize three independent claims, 3, 9, and 16. And we think these are particularly supportable in this case and there's really no clear argument for invalidity. Claims 3, 6, and 19 relate to the link ends of the invention. They talk about where the head is wider than the leg. And you want them all allowed and he wants them all rejected. Is that correct? We did file a cross-appeal trying to get the broader claims allowed. I can speak to that briefly if you'd like, but I'm focusing right now on the dependent claims. Keeping what you've got. Yes, absolutely. We're here as the FLE. We did not initially cross-appeal in that regard to preserve the broader arguments. You're at the end of your time on 13 minutes. Okay. I would like to reserve two for rebuttal. Okay. Thank you. Your Honor, as counsel noted, neither party was arguing that you do anything other than review de novo the broadest reasonable construction and not the true meaning and that is discussed in the DeGeorge case, 768 Federal Reporter, 2nd, 1318 in footnote 2, where it says that claims during prosecution, reissue, and reexamination are also given the broadest reasonable interpretation possible consistent with the specification. That approach does not apply, however, during litigation where the specification file history should be resorted to in ascertaining the claim's true meaning. Now, your point, Your Honor, is that is a pre-Morris case. And we seem to have walked into an interesting intellectual and important for the parties debate between you and others on the court that is set forth in the FLE healthcare case and the concurring opinions. Now, I understand your focus on finding an error on the part of the board by not giving the broadest reasonable interpretation, which assumes that your interpretation is, quote, broader than theirs. One could play with that, too. But ultimately, I take it what you really want us to do is uphold your version of the claim, whether we do it by saying that's the broadest reasonable or whether we do it by saying that's the correct interpretation. You really don't care, do you? I do think, personally, I disagree with your view of the law. I really do believe... I haven't stated my view of the law yet. Okay. If you go back, you will find I wrote Morris. You did? I did. Sorry, Your Honor. Now, that gives you pause, doesn't it? It is interesting. It is fascinating. But I do believe that it certainly makes sense. If the board is to apply the broadest reasonable construction, on review, that is the test you should be looking for when you look at construction de novo. You're right. For the purpose of this case, whether you find that our proposed construction is the true one, the one that was adopted by two examiners and then two additional examiners vouched for it. So four examiners thought that this was the broadest reasonable construction. It's not necessarily ours. But whether you adopt that one or the Phillips type and rule in our favor, we thank you. As far as the obviousness construction issues go, it's really significant to point out that the Ensch reference, which is a very significant reference, as you can see, was withheld from the Patent Office by Haviset during the initial pre-issuance prosecution. But when the examiners saw it during the re-examination, two different examiners, one in 2005 and one in 2006, both said combining Ensch and Horton in view of Erwin that explains the motivation is obvious. Significantly, those two examiners were operating in a pre-KSR world. It's pretty clear to me that if Ensch had been before the Patent Office in initial prosecution, this is one of those applications that would never have issued, certainly not in a post-KSR world. Do you want to give us a concluding statement? I will. And the error that the board committed was by not applying the broadest reasonable construction, it didn't find the elements in Ensch, and then it went about looking for an express motivation to combine Ensch and Horton, and that is pre-KSR mentality. Thank you very much. Just two quick comments. First of all, Haviset advocates that the claim construction adopted by the board is the broadest reasonable construction, and he submits his court should adopt that. And second of all, Mr. Cross commented that there was a withholding of a reference, Ensch, during original prosecution. I'm not aware of that, and I don't think that to be true, but I am concerned that there's some suggestive inequitable conduct during the beginning of purposeful conduct withholding Ensch. To my knowledge, that's not in the record. Can I ask one question? Sure. This brings up this perhaps tiny aspect of the case, but Claim 23, the board didn't really discuss or tell me if I've just missed it, the relevance of the 247 patent, which I take it was in fact submitted in some supplemental filing, the 247 as part of the analysis of the transverse openings. Is that a flaw in the board's analysis that needs to be, requires reconsideration? One moment, Your Honor. Randy, do we confirm that the supplemental was? I think so, Your Honor. Yeah. It should be in the record, right? Yeah. Supplemental? Yeah, it should be. Well, Your Honor, to be quick, I can't confirm whether a supplemental amendment was filed, although I take counsel's word that it was filed. Is the Claim 23 something that should be, I think there are other grounds in the record to support what the habitant's seeking in this case. Thank you. Thank you very much. That concludes our arguments for today. All rise. The Honorable Court is adjourned until tomorrow morning at 10 o'clock a.m.